# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RICHARD A. McMAHAN, RAM GROUP,
INC., GEORGIA REAL ENTERPRISES,
INC., and OMEGA PAVING AND
ENVIRONMENTAL MANAGEMENT
GROUP, LLC,**

                    **Plaintiffs,**

**-vs-**                                        **Case No.  6:06-cv-248-Orl-28KRS**

**ALLEN E. BARKER, MERCHANTS
INTERNATIONAL HOLDINGS LIMITED,
TRI-STAR OIL CORPORATION (UK)
LTD., PACIFIC RIM DEVELOPMENT
GROUP, LLC, J.J. JONES, MEGA
CHURCH INCORPORATED, and
LUTHER JAMES BLACKWELL, JR.,**

                    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

       This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **MOTION FOR DEFAULT JUDGMENT ON PLAINTIFFS' CLAIMS (Doc. No. 115)** |
| **FILED:** | **May 31, 2007** |

## I.   PROCEDURAL HISTORY.

Plaintiffs Richard A. McMahan, RAM Group, Inc. (RAM), Georgia REAL Enterprises, Inc. (REAL) and Omega Paving & Environmental Management Group, LLC (Omega) filed a complaint naming Allen E. Barker, Pacific Rim Development Group, LLC (Pacific Rim) and others[1] as defendants under the Court's diversity jurisdiction.  Doc. No. 1.[2]  McMahan is the president of RAM, which is a Florida corporation with its principal offices in Deland, Florida.  *Id.* ¶¶ 5, 20.  Paul DeLargy is the president of REAL, which is a Georgia corporation with its principal offices in Athens, Georgia. *Id.* ¶¶ 6, 17.  Thomas Settles is the CEO and Steven Wilson is the vice-president of Omega, which is a Georgia corporation with its principal offices in Stone Mountain, Georgia.  *Id.* ¶¶ 7, 16 & ex. B. Barker is a resident of California.  *Id.* ¶ 8.  Pacific Rim is a Washington corporation with offices in Tacoma, Washington.  *Id.* ¶ 11.

Count I of the complaint alleges that Barker, Pacific Rim and others defrauded Plaintiffs resulting in the loss of $550,000.00.  Count V of the complaint alleges that Barker, Pacific Rim and

---

[1]  The other defendants named are Tri-Star Oil Corporation (UK) Ltd., Merchants International Holdings Limited, J.J. Jones, MEGA Church Incorporated and Luther James Blackwell, Jr.  Plaintiffs did not perfect service of process on Tri-Star Oil Corporation (UK) Ltd., Merchants International Holdings Limited or Jones, and the causes of action against these defendants were dismissed.  Doc. No. 108.  The Court granted summary judgment in favor of MEGA Church Incorporated and Luther James Blackwell, Jr.  Doc. No. 114.

[2]  Plaintiffs filed an amended complaint, doc. no. 46, but there is no evidence that the amended complaint was served on Barker or Pacific Rim.  The amended complaint did not change the allegations pertaining to Barker or Pacific Rim.  Because only the original complaint was served on Barker and Pacific, I will cite to it for purposes of the present Report and Recommendation.

others defaulted on a "Promissory Note of Assignment."[3]  Count VII of the complaint alleges that

Barker, Pacific Rim and others committed civil theft in violation of § 772.11, Florida Statutes.  Count

VIII alleges that Barker, Pacific Rim and others have been unjustly enriched in the amount of

$480,000.00 plus statutory interest. Count IX alleges that Barker, Pacific Rim and others unlawfully

converted $480,000.00.  Count X alleges that Pacific Rim, through its president Charles A. Horne,

fraudulently induced Plaintiffs to transfer funds to Pacific Rim.  Finally, Count XI seeks "an

accounting of all the Defendants' banking, accounting, and investment records and information during

the parties' relationship and for the three subsequent years."  *Id.* ¶ 97.

Plaintiffs effected service of process on Barker.  Doc. No. 13.  Barker did not appear in the

case. Accordingly, pursuant to Plaintiffs' motion, the Clerk of Court entered a default against Barker

on February 7, 2007.  Doc. No. 92.

Pacific Rim attempted to appear in this case through an attorney who was not a member of the

bar of this Court.  Doc. No. 18.  After the Court entered an order striking this notice of appearance and

required counsel to comply with the rules of this Court regarding special admission of counsel, no

attorney subsequently appeared for Pacific Rim.  Accordingly, the Court issued an Order to Show

Cause why a default should not be entered against Pacific Rim.  Doc. No. 50.  Pacific Rim did not

respond to the order.  *See* Doc. No. 62.  The Court then issued an order directing the Clerk of Court

to enter a default against Pacific Rim, doc. no. 72, which was entered on September 27, 2006, doc.

no. 76.

---

[3]  The first page of the Promissory Note of Assignment is exhibit D to the complaint.  The second page of the Promissory Note of Assignment is the last page of exhibit E to the complaint. *See also* Doc. No. 116, ex. A (complete copy of the Promissory Note of Assignment).

Plaintiffs now seek entry of a default judgment against Barker and Pacific Rim.  Doc. No. 115. The motion is supported by a memorandum of law, the Affidavit of Richard W. Arnold (Arnold Aff.), the Affidavit of W. Vincent Rakestraw (Rackstraw Aff.), and a copy of the Promissory Note of Assignment. Doc. No. 116.  Plaintiffs served the motion on Barker and Pacific Rim.  Doc. No. 120. The time for responding to the motion has passed, and no responses have been filed as of the writing of this Report and Recommendation.  Therefore, the motion is ripe for review.

## II.    STANDARD OF REVIEW.

A court may enter a default judgment only if the factual allegations of the plaintiffs' complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.").  Therefore, in considering a motion for default judgment, a court must examine the sufficiency of the allegations in a complaint to determine whether a plaintiff is entitled to a default judgment. *Fid. & Deposit Co. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

If it is determined that a default judgment is warranted, then the Court may hold a hearing on damages. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)(citing Federal Rule of Civil Procedure 55(b)(2)).  However, a hearing is not necessary if sufficient evidence is submitted to support the request for damages. *Id.*

## III.    ALLEGATIONS OF THE COMPLAINT.

Sometime in 2003, Barker contacted J.J. Jones at Pacific Rim about a scheme to defraud charitable non-profit corporations and institutions.  Doc. No. 1 ¶ 13.  Barker told Jones that Tri-Star Oil Corporation (UK) Ltd. (Tri-Star) was a British company engaged in offshore oil drilling and other

oil related enterprises.  He represented that Tri-Star was required to maintain a reserve of $210 billion in order to do business in the United States.  *Id.* ¶ 14.

Barker represented that Merchants International Holding Limited (Merchants),[4] a company located in Bishop, California, would be able to "download" $210 billion to a Tri-Star account if it could raise $480,000.00 to $500,000.00 to pay the expenses associated with the transaction.  *See id.* at 1 and ex. A.  On about June 14, 2003, Merchants entered into a Memorandum of Understanding with Pacific Rim under which Merchants agreed to pay Pacific Rim $10 million in exchange for Pacific Rim providing the download expenses.  *See* Doc. No. 1 ex. H (referring to a June 14, 2003 Memorandum of Understanding between Merchants and Pacific Rim).

Sometime before July 7, 2003, Thomas Settles, President of Omega, inquired about the proposed download transaction.  *Id.* ex. B.  Barker responded that $500,000.00 was needed for payment of the final expenses.  *Id.*  On about July 10, 2003, Pacific Rim, through its President Charles Horne, and Omega, through Settles, entered into an Irrevocable Emissions and Pay Order Agreement that reflects that Omega would invest $500,000.00 with Merchants with the promise of payment of $6.5 million from the $10 million due to Pacific Rim under its agreement with Merchants.  *Id.* ex. H.  Plaintiffs allege that Pacific Rim and Merchants knew from the outset that they would not be able to acquire the agreed upon download funds.  *Id.* ¶¶ 90, 91.

At Jones' suggestion, Omega then attempted to find a charitable organization that needed funding to pay the capital expenses.  *Id.* ¶¶ 15, 16.  Steven Wilson, Vice-President of Omega, knew

---

[4]  In the body of the complaint, Plaintiffs occasionally refer to this company as Merchants Trading Company.

Paul DeLargy, President of REAL, a non-profit Georgia corporation that needed funding.  *Id.* ¶¶ 16, 17, 18.

DeLargy on behalf of REAL, and Settles on behalf of Omega, communicated with Barker about how REAL could qualify to benefit from a download.  Barker said that he could arrange a download of $6.5 million if Settles and DeLargy could pay $480,000.00 in expenses, which representations were "intentional perversions of the truth." *Id.* ¶¶ 19, 29 & ex. B.  Barker made these representations to induce Settles, Wilson, and Delargy to rely on his misrepresentations and to convince others to do so.  *Id.* ¶ 30.  Because neither DeLargy nor Settles had the funds to pay the expenses, they contacted Richard A. McMahan, the President of RAM,  who is DeLargy's brother-in-law, for a loan to pay the expenses.  *Id.* ¶ 20.

The representations Barker made about the download were relayed to RAM.  *Id.* ¶ 29. McMahan was willing to provide the loan in exchange for a portion of the download funds, but he required collateral for the loan.  *Id.* ¶ 21.  Settles purported to arrange for Luther Blackwell, Bishop of MEGA Church located in Cleveland, Ohio, to provide the collateral.  *Id.* ¶ 22.

On about July 21, 2003, Merchants executed and delivered to Omega a Promissory Note of Assignment between Omega (Lender/Investor), Pacific Rim, Merchants and Barker individually as a representative of Tri-Star.  *Id.* ¶ 48 & ex. D.  In that document, Omega agreed to provide a loan/investment of $480,000.00 to Merchants and Barker for payment of expenses required to download funds "under the exclusive authority of Mr. Barker." *Id.* ex. D.  The document further provides as follows: "Omega Paving will be repaid, in the principal amount of USD$480,000 inclusive of a contribution of 65% of the initial $10,000,000.00 to Pacific Rim Development Group LLC for

a total of Six Million Five Hundred Thousand Dollars ($6,500,000.00 USD) no later than July 31,

2003" provided that the expense funds were received no later than July 22, 2003.  *Id.*

On about July 23, 2003, McMahan, through RAM, loaned money to Omega.[5]  *Id.* ¶¶ 23, 42,

80.  In July, Settles on behalf of Omega then paid $480,000.00 to Richard Arnold, a South Carolina

lawyer representing Barker, Merchants and Tri-Star.  *Id.* ¶ 24 & ex. C.  Arnold disbursed the funds

to Barker, himself and others.  *Id.* ¶ 24.  McMahan, RAM, REAL, Omega and Mega Church did not

receive any download funds or repayment of the $480,000.00.  *Id.* ¶¶ 25, 51.[6]

---

[5]  The complaint is not clear regarding the amount paid to Omega.  Plaintiffs sometimes allege that RAM forwarded $550,000.00 to Omega.  Doc. No. 1 ¶¶ 31, 38, 42.  In other allegations, however, Plaintiffs allege that RAM transferred $480,000.00.  *Id.* ¶¶ 64, 78, 85.  In its ruling on the summary judgment motion filed by Defendant MEGA Church and Blackwell, the Court determined that the evidence showed that McMahan loaned $550,000.00 to Omega via REAL, of which Omega transferred $480,000.00 to Barker via his lawyer.  Doc. No. 114 at 8-9.

[6]  Throughout the complaint, Plaintiffs allege that defendants, collectively, did certain things that are inconsistent with the specific factual allegations of the complaint and other proof in the case.  For instance, they allege that "[t]he Defendants have also retained the entire amount forwarded by RAM," doc. no. 1 ¶ 26, and that "[t]he Defendants knowingly and intentionally obtained RAM's property," *id.* ¶ 69, but the evidence before the Court shows that some of the defendants, specifically Blackwell and MEGA Church, did not receive any of the funds, *see* Doc. No. 114.  Accordingly, because only the well-pleaded factual allegations of a complaint can support a finding of liability for purposes of a default judgment, I will not rely on conclusory allegations about what the defendants did, collectively, absent a specific factual allegation supporting the conclusory allegation.  *See Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. Appx. 860, 863 (11th Cir. 2007).

IV.     **ANALYSIS.**

   *A.     Standing.*

   The allegations of the complaint are not sufficient to show that McMahan has standing to bring causes of action against either Barker or Pacific Rim.  McMahan is not alleged to have been a party to contracts at issue, to have relied upon fraudulent representations, or to have personally provided the funds at issue.

   The allegations of the complaint, and the evidence on file, establish that RAM provided the funds at issue, and that Omega and REAL entered into agreements to repay the funds to RAM.  *See* Doc. No. 114.  Therefore, RAM, Omega and REAL have standing to pursue the causes of action against Barker and Pacific Rim.

   *B.     Liability.*

      1.     <u>Count I – Fraud and Count X – Fraud in the Inducement.</u>[7]

   Plaintiffs' memorandum of law addresses both the law of Florida and the law of Ohio with respect to the claim for fraud, without favoring the Court with a choice of law analysis.  "In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of the forum state."  *Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996).

   ---

   [7] Although Count I is captioned "Fraud," it states a claim for fraud in the inducement. Doc. No. 1 ¶30 ("Barker did so for the sole purpose of inducing Settles, Wilson, Blackwell and DeLargy to rely on his misrepresentations and to convince RAM Group to do the same.").  The distinction is significant because, under Florida law, a claim for fraud in the performance of a contract would be barred by the economic loss rule, while a claim for fraud in the inducement is not barred by that rule.  *See HTP, Ltd. v. Lneas Aereas Costarricenses, S.A.*, 685 So.2d 1238 (Fla. 1996).

Under Florida law, a court makes a separate choice of law determination as to each issue under consideration.  *Id.*  The United States Court of Appeal for the Eleventh Circuit has articulated the following step-by-step analysis for choice of law issues:

> The first step in choice of law analysis is to ascertain the nature of the problem involved, i.e., is the specific issue at hand a problem of law of contracts, torts, property, etc.  The second step is to determine what choice of law rule the state . . . applies to that type of legal issue.  The third step is to apply the proper choice of law rule to the instant facts and thereby conclude which [jurisdiction's] substantive law applies.

*Garcia v. Public Health Trust*, 841 F.2d 1062, 1064 (11th Cir. 1988)(quoting *Acme Circus Operating Co. v. Kuperstock*, 711 F.2d 1538, 1540 (11th Cir. 1983)).

The causes of action set forth in Counts I and X of the complaint involve the law of torts.  The law of Florida, which is the forum state, follows the "most significant relationship" test of § 145 of the Restatement (Second) of Conflict of Laws to resolve choice of law questions for tort claims.  *See Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1301 (11th Cir. 2003).[8]  This approach  requires the Court to use the law of the state which has the most significant relationship to the occurrence and the parties.  Factors to be considered include "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  Restatement (Second) Conflict of Laws § 145 (1971).  "The place of injury still determines which state's law applies, unless some other state has

---

[8]  Ohio law uses the same standard.  *See, e.g., Morgan v. Biro Mfg., Co.*, 474 N.E.2d 286, 289 (Ohio 1984).

a more 'significant relationship' to the issue." *Mezroub v. Capella*, 702 So. 2d 562, 565 (Fla. 2d Dist. Ct. App. 1997).

The alleged material misrepresentations were made by Barker, a resident of California, to representatives of Omega and REAL in Georgia, and subsequently relayed to RAM in Florida. The complaint alleges that the injury occurred when RAM, a Florida corporation doing business in the Middle District of Florida, provided the funds used to pay the capital expenses for the download transaction. The only connection with Ohio involved the collateral allegedly given by Mega Church. I conclude, therefore, that Florida has the most significant relationship to the fraud in the inducement claims, and that Florida law applies.

"The elements necessary to state a cause of action for fraud in the inducement are 1) a false statement concerning a material fact, 2) knowledge by the person making the statement that the representation is false, 3) intent by the person making the statement that the representation will induce another to act upon it, and 4) reliance on the representation to the injury of the other party." *Mettler, Inc. v. Ellen Tracy, Inc.*, 648 So. 2d 253, 255 (Fla. 2d Dist. Ct. App. 1994).

Plaintiffs allege that Barker made "material misrepresentations" and "knowingly conveyed intentional perversions of the truth" to representatives of Omega and REAL, which were relayed to RAM. Specifically, Plaintiffs allege that Merchants, a company which acted through Barker, knew that it could not obtain the download funds. They allege that Barker made these representations for the purpose of inducing Omega and REAL, through their principals Settles and DeLargy, to convince RAM to rely thereon. They further allege that RAM was injured as a result of these representations. Thus, the allegations of the complaint are sufficient to establish that Barker is liable for fraud in the inducement.

With respect to Pacific Rim, Plaintiffs allege that Pacific Rim, through Horne, executed an Irrevocable Emissions and Pay Order Agreement under which Pacific Rim agreed to pay Omega $6.5 million of the $10 million due to Pacific Rim under Pacific Rim's agreement with Merchants.  They allege that Pacific Rim knew that it would not be able to acquire the agreed upon download funds and that Pacific Rim could not comply with the terms of the Irrevocable Emissions and Pay Order Agreement.  They further allege that Pacific Rim promised the payment of $6.5 million for the sole purpose of inducing RAM, Omega and REAL to pay $500,000.00 to Pacific Rim and Merchants. They allege that RAM through Omega paid $500,000.00 to Merchants, via Attorney Arnold, resulting in injury to RAM, Omega and REAL.  Thus, with respect to the claim of fraud in the inducement as to Pacific Rim, the allegations are minimally sufficient to establish that Pacific Rim is liable for fraud in the inducement.

> 2.   <u>Count V – Default on Note</u>.

In Count V, Plaintiffs allege that Barker and Pacific Rim defaulted on the Promissory Note of Assignment (Note).  Doc. No. 1 ex. D.  There is no choice of law provision in the Note.

"Florida has traditionally applied the lex loci contractus rule for choice of law determinations regarding issues of contract law. . . . Under the lex loci contractus method issues concerning . . . substantive obligations of contracts are governed by the law of the place where the contract is made. . . . A contract is made where the last act necessary to complete the contract is performed."  *Trumpet Vine Invs., N.V.*, 92 F.3d at 1119 (internal citations omitted).  "The last act necessary to complete a contract is the offeree's communication of acceptance to the offeror."  *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1093 (11th Cir. 2004).

In the present case, the Note was accepted for Merchants by Barker in California and for Pacific Rim by Horne in Washington. Doc. No. 116-2, ex. A. As such, either the law of California or Washington would apply. "Under California law, the elements required to establish actionable breach of a contract are the existence and terms of the contract, plaintiff's performance, defendant's breach, and damages therefrom." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 633 (S.D. Cal. 1998). Washington law has essentially the same elements, specifically (1) that the plaintiff and defendant made a valid contract; (2) that the contract was breached by defendant; (3) that plaintiff performed; and (4) that plaintiff suffered damages as a consequence. 29 Wash. Practice Series § 4:1 (2007). Therefore, it is not necessary for purposes of the present motion to determine whether California or Washington law applies to Count V.

The allegations of the complaint establish that Merchants, through Barker, signed the Note. There is no allegation, however, that Barker was personally liable under the Note. Thus, the allegations of the complaint are insufficient to establish that Barker was a party to the contract.

The copy of the Note attached to the complaint reflects that Horne signed the Note for Pacific Rim. The Note provides that Omega will be repaid no later than July 31, 2003 "provided that the above referenced loan funds in the amount of USD $480,000.00 *are received by Merchants International Holding Limited no later than July 22, 2003.*" Doc. No. 1, ex. D (emphasis added). The complaint alleges that RAM did not release the funds necessary to initiate the download until July 23, 2003, after the due date set forth in the Note. *Id.* ¶ 80. The Funds Transfer Request and Authorization submitted in support of the present motion shows that the funds were not transmitted to counsel for Merchants until July 28, 2003. Doc. No. 116-2, ex. B. Thus, the allegations and evidence are

insufficient to establish that Omega performed its obligations under the Note in that it did not provide the funds to Merchants on or before July 22, 2003.

Additionally, the Note provides that Merchants will pay the principal of the loan and other proceeds to Omega "within three (3) business days after the first capital 'download' is completed. . . ." Doc. No. 116-2, ex. A. at 2.  There is no allegation that a capital download occurred; therefore, the allegations are insufficient to show that the condition precedent to the payment obligation under the Note occurred.

For all of these reasons, a default judgment against either Barker or Pacific Rim on Count V of the complaint is not appropriate.

3.   <u>Count VII – Civil Theft</u>.

In Count VII, Plaintiffs allege that Barker and Pacific Rim committed civil theft in violation of § 772.11, Florida Statutes.  To prove the violation, Plaintiffs must allege facts sufficient to show by clear and convincing evidence both the statutory elements of theft and criminal intent.  *Gersh v. Cofman*, 769 So. 2d 407, 409 (Fla. 4th Dist. Ct. App. 2000).

In their memorandum of law, Plaintiffs rely on § 812.014, Florida Statutes, to establish the statutory elements of theft.  Doc. No. 116 at 6.  To prove the crime of theft in violation of § 812.014, Plaintiffs must allege facts sufficient to show that Barker and Pacific Rim (1) knowingly and unlawfully obtained funds from Plaintiffs; (2) with the intent to, either temporarily or permanently, deprive the Plaintiffs of their own use of the funds or deprive the Plaintiffs of their right to the funds or any benefit from the funds.  Florida Criminal Jury Instructions 14.1 (2002).  "Where the property at issue is also the subject of a contract between the parties, a civil theft claim requires additional proof

of 'an intricate sophisticated scheme of deceit and theft.'" *Gersh*, 769 So. 2d at 409 (quoting *Trend*

*Setter Villas v. Villas on the Green*, 569 So. 2d 766, 767 (Fla. 4th Dist Ct. App. 1990)).

Plaintiffs allege that Barker devised a scheme to defraud charitable non-profit corporations and

institutions.  They allege that Merchants, which acted through Barker, and Pacific Rim knew from the

outset that the agreed download funds could not be acquired.  They allege that Barker, Arnold and

unnamed others obtained a portion of the funds paid to fund the download transaction.  They allege

that "[t]he Defendants knowingly and intentionally obtained RAM's property to the deprivation of

RAM's right to the property as well as to appropriate the property for the benefits of the Defendants."

Doc. No. 1 ¶ 69.  Plaintiffs allege that they have made written requests to Barker for the return of the

funds, but that no portion of the money has been returned.  *Id.* ¶¶ 71, 72.  These factual allegations

are sufficient to establish that Barker is liable for civil theft under Florida law.

The allegations of the complaint are insufficient, however, to establish that Pacific Rim

obtained funds from Plaintiffs.  As noted above, the only specific allegations about distribution of the

funds was that Omega transferred the funds to Attorney Arnold, who, in turn, distributed them to

Barker, himself and unnamed others.   Accordingly, the well-pleaded factual allegations of the

complaint are insufficient to establish the first element of civil theft as to Pacific Rim.  As such, a

default judgment against Pacific Rim on Count VII of the complaint is not warranted.

4.    Count VIII – Unjust Enrichment.

In Count VIII, Plaintiffs allege that Barker and Pacific Rim were unjustly enriched by retaining

the $480,000.00.  Florida law applies the lex loci contractus rule for determining the governing law

with respect to unjust enrichment claims.  *See Trumpet Vine Invs., N.V.*, 92 F.3d at 1119-20.  Under

Florida law, the elements of unjust enrichment are as follows: "(1) plaintiff has conferred a benefit on

the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Merkle v. Health Options, Inc.*, 940 So. 2d 1190, 1199 (Fla. 4th Dist. Ct. App. 2006)(citing *Hillman Constr. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th Dist. Ct. App. 1994)).  Based on these elements, the last act necessary to establish unjust enrichment is the acceptance and retention of the benefit conferred.

The Plaintiffs allege that the benefit was conferred when Omega paid $480,000.00 to Richard Arnold, the lawyer representing Barker.  Thus, the last act necessary to establish unjust enrichment occurred in South Carolina, where Arnold was located.

Under South Carolina law, unjust enrichment is treated as a type of quasi-contract.  The elements are as follows: "(1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value." *Columbia Wholesale Co., Inc. v. Scudder May N.V.*, 440 S.E.2d 129, 130 (S.C. 1994).

As alleged in the complaint, Plaintiffs conferred a benefit by paying $480,000.00 to Barker's lawyer, who distributed the money to Barker, himself and others. Barker retained the funds under conditions that make it inequitable for him to do so.  Therefore, the allegations of the complaint are sufficient to establish that Barker has been unjustly enriched.

While Plaintiffs allege that  Defendants retained the entire amount of the funds, doc. no. 1 ¶ 26, there is no factual allegation that any portion of the funds were distributed to Pacific Rim. Therefore, I recommend that the Court find that the conclusory allegation that Defendants retained the funds is insufficient to establish liability for unjust enrichment as to Pacific Rim.

     5.     <u>Count IX – Conversion</u>.

In Count IX, Plaintiffs allege that Barker and Pacific Rim converted the $480,000.00 paid to Attorney Arnold.  Under Florida law, conversion is a tort claim to which the "most significant relationship" test applies to determine the governing law.  The $480,000.00 at issue originated with RAM in Florida, but the money was loaned to Omega in Georgia, and Omega transferred it to Barker through his attorney.[9]

Florida and Georgia law apply the same elements to establish conversion: an unauthorized assumption and exercise of right of ownership over property belonging to another in hostility of or inconsistent with the rights of the owner of the property or an otherwise unauthorized appropriation of the property.  *See Both v. Frantz*, 629 S.E.2d 427, 429 (Ga. App. 2006); *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So. 2d 1157, 1161 (Fla. 3d Dist. Ct. App. 1984).

Plaintiffs allege that Barker, through his attorney, exercised dominion and control over the $480,000.00 and refused to return it despite a demand that he do so.  As such, the well-pleaded facts are sufficient to establish that Barker is liable for conversion.

There is no specific allegation that Pacific Rim exercised dominion or control over the $480,000.00.  There is also no allegation that Plaintiffs demanded that Pacific Rim return any portion of the money.  Accordingly, the well-pleaded facts are not sufficient to establish that Pacific Rim is liable for conversion.

------------------------------------------------

[9]  Plaintiffs allege that "the funds remained property of RAM and were to be timely returned to RAM with the accompanying 'downloaded' funds."  Doc. No. 1 ¶ 83.  For purposes of determining liability on the conversion count, it is not necessary for the Court to determine whether RAM or Omega owned the funds at the time they were transferred to Barker.

6.      <u>Count XI – Accounting</u>.

In the motion for default judgment, Plaintiffs do not address their cause of action seeking an accounting.  Accordingly, I recommend that the Court conclude that this cause of action has been abandoned.

C.      *Damages.*

Plaintiffs seek an award of $550,000.00, trebled under the civil theft statute, and reasonable attorney's fees, costs and expenses. Doc. No. 115 at 1-2.[10]  In support of the initial damages amount, they provided the Funds Transfer Request and Authorization and Affidavit of Richard Arnold.  These documents show that $480,000.00, rather than $550,000.00, was sent by wire transfer to Richard W. Arnold, and that Arnold acknowledged receipt of the funds.  Therefore, the compensatory damages due to RAM, Omega and REAL from Barker and Pacific Rim are $480,000.00.

Florida's civil theft statute provides that the victim of a civil theft is entitled to "threefold the actual damages sustained." § 772.11(1), Fla. Stat.[11]  Therefore, RAM, Omega and REAL are entitled to receive and additional $960,000.00 from Barker as treble damages.[12]

---

[10]  To the extent that other relief was sought in the complaint, I recommend that the Court find that those prayers for relief have been abandoned.

[11]  The statute has a pre-suit demand requirement.  When, as here, the amount at issue has not been paid, failure to present evidence that the pre-suit demand was made is not a basis to deny the requested relief.  *See, e.g., Christopher Adver. Group, Inc. v. R & B Holding Co.*, 883 So. 2d 867, 876 (Fla. 3d Dist. Ct. App. 2004); *Seymour v. Adams*, 638 So. 2d 1044, 1049 (Fla. 5th Dist. Ct. App. 1994).

[12]  The compensatory damages ($480,000.00) plus the additional civil theft damages ($980,000.00) total three times the actual damages.

The civil theft statute also provides that the victim of a civil theft is entitled to "reasonable attorney's fees and court costs." *Id.* In his affidavit, Rakestraw estimates the attorney's fees at $50,000.00 as of the date of the affidavit, and provides no evidence of the costs incurred. Accordingly, the evidence is insufficient to determine the amount of attorney's fees and costs due from Barker. I recommend that the Court render its order on the motion for default judgment and permit Plaintiffs to submit evidence in support of the assessment of attorney's fees and costs within fourteen days after the order is entered, if the Court determines that an award of attorneys' fees and costs is warranted.[13]

## V.   RECOMMENDATION.

For the reasons discussed above, I recommend that the Court **GRANT** in part the Motion for Default Judgment on Plaintiffs' Claims (Doc. No. 115) as follows:

1.       Enter judgment in favor of RAM Group, Inc, OMEGA Paving & Environmental Management Group, LLC, and Georgia REAL Enterprises, Inc. against Defendants Pacific Rim Development Group, LLC and Allen E. Barker, jointly and severally, in the amount of $480,000.00;

2.       Enter judgment in favor of RAM Group, Inc., OMEGA Paving & Environmental Management Group, LLC, and Georgia REAL Enterprises, Inc. against Defendant Allen E. Barker in the additional amount of $960,000.00;

---

[13] To support an award of attorney's fees, Plaintiffs must submit evidence of the reasonable hourly rate for their attorneys in the central Florida market and the reasonable number of hours worked by their attorneys. This should be in the form required by *Norman v. Housing Authority*, 836 F.2d 1292 (11th Cir. 1988). Costs are generally limited to those taxable under Federal Rule of Civil Procedure 54 and 28 U.S.C. § 1920, and must be supported by proof that the cost was actually and reasonably incurred and that it was paid or is due to be paid.

     3.     Direct RAM Group, Inc., OMEGA Paving & Environmental Management Group LLC, and Georgia REAL Enterprises, Inc. (REAL) to file a motion for assessment of attorney's fees and costs against Allen E. Barker with supporting evidence within fourteen days after entry of the order on this Report and Recommendation.

I further recommend that the Court **DENY** the Motion for Default Judgment on Plaintiffs' Claims (Doc. No. 115) in all other respects and **DISMISS** the causes of action set forth in the complaint against Allen E. Barker and/or Pacific Rim Development Group, LLC with respect to which default judgment is not entered. Thereafter, I recommend that the Court direct the Clerk of Court to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully Recommended in Orlando, Florida this 12th day of December, 2007.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy